Per Curiam.
Gould claims a right of preemption of lands south of French Broad .and Holston, under John Jackson the elder. The caveator, or any person under whom he claims, had not possession on the 6th of February, 1796; but John Jackson, junior, under whom the caveatee claims, was in possession of the land in dispute on that day. John Jackson, senior, and John Jackson, junor, agreed on a conditional line, which includes the land in dispute. John Jackson, senior, transferred his right to the caveator, of and in the lands in dispute by bill of sale. The conditional line was made in 1795 or 1796. John Jackson, senior, had a tomahawk improvement, or some chopping done, or brush-heaps made, and he lived three or four miles distant from the land in dispute. The Indian claim to .these lands was not extinct on the 6th day of February, 1796, or at the time said line was made. The court gaye judgment for the defendant, * and the caveator appealed to this court. The lands south of French Broad and Holston are in that tract of country which, by the act of 1783, ch. 2, § 5, is reserved for the Cherokee Indians, and is excepted from entry and appropriation by that act. These lands were, notwithstanding, settled by numbers of persons, who are noticed by the act of 1789, ch. 1, § 1, paragraph 10 : “ This act shall not prevent the people residing south of French Broad, between the rivers Tennessee and Big Pigeon, from entering their preemption in that tract, should an office be opened for that purpose, under an act of the present General Assembly.” In 1791, the treaty of Holston extinguished the Indian claim to all those lands lying east of a line run from the southern boundary of this State north to a point, from which a line is to be extended to the river Clinch, that shall pass the Holston at a ridge which divides the waters running *83 into Little River from those running into the Tennessee. The Constitution of this State, passed the 6th of February, 1796, notices them again in § 31: “ That the people residing south of French Broad and Holston between the rivers Tennessee and Big Pigeon, are entitled to the right of preemption and occupancy in that tract.” Also, they are noticed in a schedule annexed to the Constitution, § 8, which qualifies the holders of lands to act as freeholders in all capacities where freeholders are requisite. In 1798, the treaty of Tellico extinguished the Indian claim to the residue of this tract, which had not been extinguished by the treaty of 1791. In 1806, the act of Congress secured to the people residing south of French Broad and Holston, and west of Big Pigeon River, provided for by the “ Constitution of the State of Tennessee, in their respective rights of occupancy and preemption, and shall receive titles as they may respectively claim, including their improvements, not exceeding 640 acres each, nor exceeding the quantities they have heretofore claimed respectively, according to their conditional * lines, where such have been established, at a price not less than one dollar per acre.” In the year 1806, an office was opened for the appropriation of these lands, and providing for the settlement of disputes by caveat. The Constitution is acknowledged by the act of Congress of 1806, to have provided for residents on this tract of country. It is at least ratified, so far as regards this subject, by the act of 1806, if it never were before. This is well done by the act of 1806, as by the act of admission of this State into the Union, made shortly after the establishment of the Constitution ; for both operate by way of retrospection, confirming the rights secured, as from the date of the Constitution. Who are entitled under the Constitution ? All those residing on the tract. To a right of preemption of what ? Of lands to be appropriated there, on such terms as shall afterwards be prescribed by law ; which it was then expected would, at some future time, be made by Congress. What entitled them to this preemption ? Residence on that tract of country when the Constitution was made; in other words, on the 6th of February, 1796. What under the Constitur tion entitled to a right of occupancy ? Having settled upon a piece of land, and being settled upon it on that day. The right of preemption and occupancy differed in this, that a right of preemption respected lands to be identified by such means as the law should *84 prescribe; occupancy respected lands already identified by possession and residence upon them; all were entitled for their usefulness in opposing a barrier to the Indians in difficult times. Some were still further favored with the right to appropriate particular spots, because they had seated themselves upon them, and rendered them useful by preparation for the production of food and sustenance for the population óf the country. He who was settled in a particular spot might claim it, though settled there for a time in defiance of law. He was forgiven for that in consideration of the protection ' he had afforded to the interior. They * had all settled .against law, and were forgiven for it by the law of 1789; then by 1796, and lastly a part of them by 1806, having acted in contravention to the last treaty and laws of Congress before that period. It will not do, in endeavoring to get a view of the spirit of these laws, to consider their acts done against law, as being at this time remembered. They are all amnestised, covered with the mantle of oblivion. He who was an occupant had a fight to appropriate, agreeably to the rules of the land office, as far as to his conditional lines, but not into an adjacent tract, beyond the bounds of his occupancy. He was not entitled to an occupancy and preemption and to a residence right and preemption both.' He could contract with the owner of a residence right and preemption not to go beyond certain limits, and to leave all beyond them for the appropriation of the latter. What shall be an improvement which entitles to a right of occupancy, is referred by act of 1806, ch. 10, to the law of North Carolina, which is stated in 1778, ch. 6, § 3. That requires that a house shall have been erected, or that he shall have cleared, inclosed, or cultivated a part thereof. Agreements are, by the laws of North Carolina, to be made by the courts the foundation of their judgment (1779, ch. 4, § 5) in caveat causes. The court may, on the trial of a caveat, so far equitise as upon equitable matter sufficiently established to give the same judgment in effect, as a court of equity would give in the like case. Would it be equitable, then, to restrain the occupant, from extending his claim, by reason of his contract not to do so ? He says to the preemptioner by residence, if you will agree to let me come to this line, without objection, let the Legislature hereafter allow me 640 acres or less, or you 640 acres or less, — no matter what quantities, — I will agree also on my part not to go further. We will mutually be bound not to give disturb *85 anee to each other. The preemptioner does much for the occupant by entering into this agreement. * He withdraws any question as to the correct origination of the occupant claim. He relieves him from the dread of the objection of having been in possession in violation of a law of the United States. In that view, the right of the preemptioner, at the time of the agreement, might be supposed better than his. He is secured by the agreement, and when the law of 1806 comes (ch. 2), and speaks of occupancy or preemption, and legalizes his claim, shall he then be permitted to forget the comfort he derived from the bargain, in the time of his infirmity, and to abandon it ? No, not so. He is bound upon the very same principle as that which was adopted and acted upon by the court in the case cited from Newland, 109. Grould, therefore, standing in the place of John Jackson, senior, ought, as against the caveatee, to be deemed entitled to a grant for all the lands in controversy which are not included in the conditional lines in the occupancy of the caveatee. But can the caveator aver, that he is entitled to a grant for the lands in controversy within the survey, and not within the conditional lines of the caveatee ? He has not made an entry, nor included the lands he claims in a survey. The original notion was, that upon the decision of a caveat he is entitled to all the caveatee has done by way of preparation for the emanation of a grant. He is entitled to the entry, if the caveatee has made one, and to a survey, if he has made one, of the land in dispute. Other requisites he must perform himself. The caveator’s part of the survey ought to be so described in the caveat and judgment of the court as to be distinguishable from other parts of the survey. See 1777, ch. 1, § 6. It is no solid objection, we believe, at this day, that the caveator had not caused this land to be surveyed. He was prevented, perhaps, by the survey of the caveatee.
Judgment for the caveator as to all the lands not within the occupancy of the caveatee, as described and limited by his conditional lines; but within his * survey complained against by the caveator in his caveat.
See, as to caveat, Peck v. Edington, 2 Tenn. 331; Huffaker v. Green, 4 Hay. 51; King’s Digest, 7848, 7871.